

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Osvaldo Pérez Marrero | 2012 TSPR 81 <br><br> 185 DPR ____ |

Número del Caso: CP-2010-4

Fecha: 18 de abril de 2012

Abogado de la Parte Querellada:

        Lcdo. Plinio Pérez Marrero

Oficina de la Procuradora General:

        Lcda. Irene Soroeta Kodesh
        Procuradora General

        Lcda. Edna Evelyn Rodríguez
        Procuradora General Auxiliar

Materia: Conducta Profesional- La suspensión será efectiva el 24 de abril de 2012 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Osvaldo Pérez Marrero

CP-2010-0004

PER CURIAM

En San Juan, Puerto Rico, a 18 de abril de 2012.

El 6 de mayo de 2010 la Procuradora General presentó una querella sobre conducta profesional contra el Lcdo. Osvaldo Pérez Marrero en cumplimiento con la orden de este Tribunal. En dicho cargo, se le imputó violación al Canon 21 de Ética Profesional, 4 L.P.R.A. Ap. IX, C 21, por representar profesionalmente a la Corporación Oros Verdes Inc. y al Dr. José Camuñas Córdova en una acción de daños y perjuicios contra Doral Financial Corporation. Específicamente, la Procuradora arguye que tal representación infringió el Canon 21, *supra*, toda vez que los intereses de la Corporación y los del doctor Camuñas Córdova eran contrarios.

Luego de que el licenciado Pérez Marrero sometiera su posición sobre las alegaciones presentadas, nombramos a la Lcda. Crisanta González Seda como Comisionada Especial para que recibiera y aquilatara la prueba a ser presentada en una vista evidenciaria. Además, se le requirió que preparara un informe con sus determinaciones de hechos y las recomendaciones que estimara procedentes.

Posteriormente, el licenciado Pérez Marrero presentó su contestación al Informe de la Comisionada y discrepó de las conclusiones contenidas en el mismo. Examinado el referido escrito y la contención del querellado, coincidimos con la Comisionada Especial en que el abogado incurrió en la violación ética señalada.

Para la atención de la querella ética que nos ocupa, veamos los antecedentes fácticos que se desprenden del Informe de la Comisionada Especial y en el legajo del caso.

I

El Lcdo. Osvaldo Pérez Marrero (querellado) fue admitido al ejercicio de la abogacía el 5 de junio de 1974. El 16 de agosto de ese mismo año le fue expedida la autorización para ejercer como notario público.

Surge de los hechos que el querellado era secretario y vicepresidente de la corporación Oros Verdes, Inc., (Corporación). Para finales del año 2004, el Sr. Oriel Ramírez Rodríguez (Ramírez Rodríguez), presidente de la referida Corporación, se interesó en la adquisición de un apartamento que el Dr. José Camuñas Córdova (querellante) y

su esposa tenían para la venta en el Condominio Playa Fortuna en Luquillo. Así pues, el licenciado Pérez Marrero contactó al querellante en representación de la Corporación para iniciar la negociación de compraventa del inmueble.

En ese momento el apartamento tenía un gravamen hipotecario a favor de Doral Financial Corporation (Doral). En vista de ello, el querellado y el señor Ramírez Rodríguez realizaron durante la etapa de negociación gestiones para que la Corporación asumiera la hipoteca existente. Doral expresó que no había problema en realizar la transferencia de la deuda hipotecaria y relevar a los titulares de esa obligación. Contando con el compromiso de Doral, la escritura de compraventa se otorgó el 1 de abril de 2005. En representación de Oros Verdes Inc., compareció el señor Ramírez Rodríguez, por su parte, el doctor Camuñas Córdova y su cónyuge comparecieron como vendedores del inmueble.

Igualmente, ese mismo día las partes comparecientes suscribieron un documento intitulado *Acuerdo de traspaso y/o cancelación de deuda*, en el que se dispuso lo siguiente:

1. Que en el día de hoy las partes han otorgado escritura de compraventa mediante la cual los comparecientes de la segunda parte traspasan la titularidad sobre la propiedad localizada en el Condominio Playa Fortuna, apt. 203, Luquillo a una corporación propiedad de los comparecientes de la primera parte.

2. Que el compareciente de la primera parte [la Corporación representada por Ramírez Rodríguez] ha representado que el acreedor hipotecario sobre el préstamo adquirido por

los comparecientes de la segunda parte para la adquisición de dicha propiedad, ha autorizado y habrá de transferir la deuda a nombre de la Corporación Oros Verdes, Inc., y liberará a los comparecientes de la segunda parte como deudores con respecto a la deuda.

3. Que los comparecientes de la segunda parte, han asentido a otorgar la escritura de compraventa en cuestión a favor de la Corporación de Oros Verdes, Inc., propiedad de los comparecientes de la primera parte, descansando en la representación que se les hace de que el acreedor hipotecario ha establecido que aceptará transferir el balance de la deuda hipotecaria a nombre del nuevo adquirente Oros Verdes, Inc., y/o los comparecientes de la primera parte.

4. Que en el caso de que la referida representación resulte ser incorrecta y **el acreedor hipotecario no autorice liberar de la deuda a los comparecientes de la segunda parte dentro del plazo de 90 días, entonces los comparecientes de la primera parte se comprometen a refinanciar la propiedad y/o tomar todas aquellas medidas necesarias para que los comparecientes de la segunda parte queden totalmente liberados en su carácter personal sobre la referida obligación.** (Énfasis suplido.) Informe de la Comisionada Especial, pág. 10. Exhibit 3.

En septiembre de 2005, luego de cinco meses desde que las partes otorgaron los contratos, el doctor Camuñas Córdova comenzó a recibir cartas de cobro de Doral por atrasos en los pagos de la hipoteca del apartamento. En consecuencia, el querellante contactó al licenciado Pérez Marrero quien le comunicó por primera vez que Doral aún no había aceptado la transferencia de la deuda hipotecaria a su empresa. Durante los meses siguientes, Doral continuó con las gestiones de cobro contra el querellante. Este, a su vez, mantuvo comunicación con el querellado, quien se reiteraba en que Doral debía honrar su compromiso de

permitir que la Corporación asumiera la deuda hipotecaria. Por consiguiente, el licenciado Pérez Marrero persistió en las gestiones para que Doral realizara el traspaso de la hipoteca. Empero, no surge de la prueba que este efectuara diligencia alguna para que, según lo acordado, la Corporación refinanciara la propiedad y se liberara al doctor Camuñas Córdova y a su esposa de la obligación con Doral. Por su parte, el licenciado Pérez Marrero le informó al querellante que demandaría a Doral por incumplimiento y que reclamaría sus daños como parte del pleito. Así pues, el querellado presentó una demanda contra Doral el 26 de abril de 2006 a nombre de la Corporación y del querellante.

Posteriormente, en el mes de octubre de ese mismo año, el querellado envió al doctor Camuñas Córdova un interrogatorio que le fuera remitido por la demandada Doral. El querellante se comunicó con el letrado y le informó que no podía contestar ni suscribir ese interrogatorio ante el desconocimiento de la información que se solicitaba en el mismo. Adujo que en ese momento advino en conocimiento de que figuraba como codemandante contra Doral y le expresó al abogado que no deseaba ser parte del pleito contra la institución financiera. Arguyó además, que el incumplimiento contractual era por parte de la Corporación y no de Doral. Asimismo, le expresó al querellante que no deseaba tenerlo como su abogado. Ello pues, entendía que este también era responsable de los daños que él había sufrido. Por tal razón, el 27 de

noviembre de 2006 el doctor Camuñas Córdova presentó una queja ante este Tribunal contra el licenciado Pérez Marrero en la que adujo que el letrado asumió su representación legal sin su autorización y que sus actuaciones le afectaron económicamente.[1] En consecuencia, se inició el proceso disciplinario objeto de la querella, según fue ordenado por esta Curia.

De otra parte, el querellado no renunció a la representación legal del doctor Camuñas Córdova y tampoco lo excluyó del pleito. En vista de ello, el querellante contrató al Lcdo. Rubén Colón Morales para que solicitara al foro primario que lo relevara de la representación legal del licenciado Pérez Marrero en el caso contra Doral. Subsiguientemente, el 22 de febrero de 2007 el Tribunal de Primera Instancia ordenó que se relevara al querellante de la representación legal del querellado y admitió al licenciado Colón Morales como su nuevo abogado.

Así las cosas, el 12 de marzo de 2007 el querellante y Doral presentaron una estipulación de desistimiento parcial. En el acuerdo, el doctor Camuñas Córdova desistió con perjuicio de la reclamación contra la entidad bancaria.

---

[1] Luego del nombramiento de la Comisionada Especial, el 25 de octubre de 2010, el querellante presentó contra el querellado otra queja AB-2010-276, que está relacionada con este caso. Alegó que el licenciado Pérez Marrero incurrió en otra violación ética, al contrainterrogarle, en el mismo pleito que compareció originalmente como su abogado. Sostiene que durante la vista en que se ventilaba la demanda de coparte, instada por él contra la Corporación, el querellado compareció en representación de la Corporación y en contra de los intereses de la posición del querellante, lo que constituyó otro conflicto.

Así pues, acogida esa petición, el foro primario dictó sentencia a esos efectos.

Entretanto, el 16 de marzo de ese mismo año, el querellante instó una demanda contra coparte hacia la Corporación y contra tercero respecto al licenciado Pérez Marrero. En su recurso, exigió que le compensaran los daños que estos le ocasionaron por el incumplimiento con el pago de la hipoteca del apartamento, a sabiendas de que se afectaría su crédito y el de su cónyuge. Igualmente, reclamó por las representaciones que le hicieron al momento de suscribir la compraventa, en cuanto a que el financiamiento de Doral era algo cierto; así como el incumplimiento con los términos del *Acuerdo de traspaso y/o cancelación de deuda*. Esto es, que si Doral no autorizaba liberar a los vendedores de la deuda hipotecaria, dentro de los 90 días de efectuada la compraventa, -como en efecto ocurrió- la Corporación se obligaba a saldar dicha deuda realizando un refinanciamiento.

Luego de varios trámites procesales, el 10 de julio de 2008 Oros Verdes Inc., y Doral presentaron una *Estipulación de desistimiento con perjuicio y relevo*. En esta, Doral convino que la Corporación asumiera la deuda hipotecaria si se cumplían ciertas condiciones. Además, se peticionó el archivo definitivo del caso y que se dictara sentencia por desistimiento en cuanto a Doral. Acogida la estipulación, el Tribunal de Primera Instancia dictó la sentencia de archivo el 29 de agosto de 2008.

De otra parte, el 3 de septiembre de 2008 el doctor Camuñas Córdova solicitó el archivo sin perjuicio de la demanda contra Pérez Marrero y la anotación de rebeldía a la corporación Oros Verdes Inc., por esta no haber contestado la demanda. El tribunal acogió la solicitud de archivo sin perjuicio a favor del querellado y dictó sentencia a esos efectos. Así también, el 6 de octubre de 2008 el foro primario anotó la rebeldía a la Corporación y señaló vista para el 16 de abril de 2009.

Sin embargo, el 29 de enero de 2009 la Corporación, representada por el querellado, acudió al foro de instancia y adujo en una *Moción de reconsideración a rebeldía y solicitud de notificación de demanda de coparte* que no se le notificó de la demanda. El tribunal de instancia determinó mantener su posición original en cuanto a la anotación en rebeldía.

Así las cosas, tras varios incidentes procesales, se reseñaló la vista para el 13 de julio de 2010. Ese día, el único testigo fue el querellante. Este fue contrainterrogado por el licenciado Pérez Marrero, quien continuó compareciendo como abogado de la Corporación. Finalmente, el 23 de noviembre de 2010 el foro primario dictó sentencia en la que ordenó a Oros Verdes Inc. a resarcirle al doctor Camuñas Córdova la suma de $5,000 por el daño ocasionado a su crédito y la suma de $10,000 por angustias mentales. Igualmente, se le impuso a dicha parte el pago de $1,500 por costas de litigio y honorarios de

abogado. Esta sentencia fue apelada, no obstante, el Tribunal de Apelaciones la confirmó.[2]

Con el beneficio del informe de la Comisionada Especial, las apreciaciones de la Procuradora General y las réplicas del querellado, pasemos a discutir el marco ético aplicable.

## II

El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, tiene el propósito de evitar que los abogados incurran en la representación de intereses encontrados. In re Toro Cubergé, 140 D.P.R. 523 (1996). Ello pues, es necesario preservar una completa lealtad del abogado hacia su cliente, y que la representación legal provista esté libre de ataduras personales. In re Pizarro Colón, 151 D.P.R. 94 (2000).

Al interpretar el Canon 21, supra, hemos apuntado que el deber de lealtad completa exige primeramente que el abogado ejerza un criterio profesional independiente. En atención a ello, resulta imperativo que cuando un letrado acepte una representación legal, o que continúe en ella, su juicio profesional no se vea afectado por sus intereses personales. A esos efectos, se proscribe que un abogado represente a un cliente cuyos intereses estén reñidos con los suyos propios. Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 858 (1995). Tal conflicto ocurre cuando un abogado deja de realizar determinada acción que podría

---

[2] Oros Verdes Inc. v. Dr. José Camuñas Córdova, KAC 2006-2513, resuelto el 21 de junio de 2011.

beneficiar a su cliente, porque esta frustraría sus expectativas personales para el caso en cuestión. Id. Así pues, cuando surgen situaciones de esta índole, el togado tiene la obligación de renunciar a la representación de dicho cliente.

Así también, el segundo aspecto del deber de lealtad que promueve el Canon 21 del Código de Ética Profesional, *supra*, consiste en no revelar confidencias que el cliente le haya comunicado al abogado. Liquilux Gas Corp. v. Berríos, Zaragoza, supra. Por esa razón, se prohíbe que el abogado incurra en representaciones simultáneas o sucesivas adversas. Id. Esta doctrina proscribe que "el abogado represente a clientes en una controversia que esté sustancialmente relacionada a la de otro cliente, actual o anterior, cuando los intereses de ambos sean antagónicos". Id. pág. 859.

Específicamente, la prohibición simultánea de clientes busca preservar "la autonomía del juicio del abogado y prevenir cualquier tipo de dilución de la fidelidad que este debe a su cliente". In re Báez Genoval, 175 D.P.R. 28, 36 (2008). Cuando ocurre, la representación simultánea crea un conflicto insalvable, que impide una representación libre y adecuada. In re Monge García, 173 D.P.R. 379 (2008). En ese sentido, este Tribunal ha advertido que "el abogado debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de que promueve o defiende intereses encontrados con los de su cliente". Id. pág. 384. De surgir

representaciones simultáneas adversas, "el único remedio disponible para el abogado es renunciar a ambas representaciones y no sólo a una". Liquilux Gas Corp. v. Berríos, Zaragoza, supra, pág. 859.

Asimismo, hemos afirmado que en la representación sucesiva adversa "el abogado acepta la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior". In re Báez Genoval, supra, pág. 36. Sobre este particular, hemos establecido que es necesaria la existencia de una relación abogado cliente para que se active esta prohibición. Id.

Por otro lado, la determinación de si un abogado incurrió en la representación sucesiva de intereses encontrados requiere el análisis de su conducta a la luz del criterio de relación sustancial. In re Báez Genoval, supra. Cónsono con ese criterio, el cliente solo debe probar que la controversia legal en la que el abogado comparece en su contra está sustancialmente relacionada con la causa de acción en la cual el abogado previamente le representó. Id. Por consiguiente, resulta innecesario que el cliente demuestre una violación al principio de confidencialidad. Id.

### III

En la querella presentada por la Procuradora General se le imputó al licenciado Pérez Marrero incurrir en conducta violatoria del Canon 21 del Código de Ética Profesional, supra. Como parte del proceso disciplinario,

la Comisionada Especial rindió su Informe y concluyó que la evidencia demostró que el querellado infringió el referido precepto ético.

Como previamente reseñamos, Oros Verdes Inc. se obligó a liberar al querellante y a su esposa de la obligación hipotecaria que gravaba la propiedad que le vendieron a la Corporación. Específicamente el acuerdo disponía que dentro de 90 días de la compraventa se debía hacer la transferencia de la deuda, si ello no ocurría, procedía entonces que la entidad compradora hiciera un refinanciamiento del inmueble. Es un hecho incontrovertido que el querellado era secretario y vicepresidente de dicha Corporación y, por tanto, tenía interés en la transacción que se hizo a nombre de esta. En ese contexto fáctico, es inescapable colegir que su juicio profesional estaba comprometido con sus intereses personales.

En vista de ello, independientemente de que el querellado entendiera que el doctor Camuñas Córdova lo había autorizado a representarlo en la acción judicial contra Doral, como así alega, los indicios de conflicto eran meridianamente claros. En contraposición se encontraba el interés personal del licenciado Pérez Marrero de que Doral transfiriera a nombre de Oros Verdes Inc. la hipoteca que gravaba al apartamento *versus* el interés que tenía el querellante de que se le compensaran los daños ocasionados por los atrasos en el pago de la hipoteca, y se le relevara de la deuda hipotecaria según fue acordado. Es por tal

razón que el querellante le reclamó al letrado que quien le debía cumplir a él no era Doral, sino la Corporación. Vemos sin embargo, que ante estos reclamos el querellado incoó una demanda a nombre del querellante y de la Corporación, haciendo patente la representación de intereses encontrados.

Al asumir la representación legal de la Corporación, de la cual era vicepresidente y secretario, y recibir honorarios de esta para tal encomienda y para representar al querellante, el letrado inevitablemente incurrió en un claro conflicto ético. Más aún cuando tenía conocimiento de que la Corporación de la que formaba parte, estaba incumpliendo el acuerdo con el querellante.

De igual forma, el licenciado Pérez Marrero debió tener presente que esa situación de conflicto de interés le impedía mantener su deber de lealtad para con la Corporación y con el querellante a la vez. Además de la contraposición de sus intereses personales y los del querellante, el antagonismo de los intereses de sus clientes era evidente por la existencia del acuerdo de traspaso. El representar a ambas partes limitó su obligación de lealtad hacia el querellante y hacia la Corporación. Es menester puntualizar que bajo esas circunstancias, el querellado no podía abogar responsable y diligentemente a favor de los mejores intereses de ambos clientes simultáneamente. El bien de la Corporación, así

como su interés propio estaban en juego y reñidos con el deber de lealtad que promueve nuestro ordenamiento ético.

De otra parte, hemos sido enfáticos en que los abogados deben evitar hasta la apariencia de conducta impropia y que sus actuaciones no deben dar el más mínimo margen a la interpretación de que promueven intereses adversos a los de sus clientes. Este principio, sin embargo, fue menospreciado y burlado por el licenciado Pérez Marrero. Ello pues, al asumir la representación legal del querellante, el letrado aparentó además que quería impedir que el doctor Camuñas Córdova exigiera, como le correspondía, el cumplimiento del contrato de traspaso y se refinanciara la propiedad adquirida por la Corporación.

Más aún, la situación se agravó cuando el querellado continuó representando a la Corporación luego de que el doctor Camuñas Córdova contratara a otro abogado para que lo librara de la representación simultánea adversa de la cual fue víctima. A estas alturas debió renunciar de inmediato a la representación de la Corporación para evitar la apariencia de una representación sucesiva adversa. Sin embargo, tampoco lo hizo.

No podemos hacernos de la vista larga e ignorar que las acciones del licenciado Pérez Marrero, un abogado que lleva más de 30 años ejerciendo la profesión, fueron contraproducentes y laceraron el derecho a una representación legal eficiente y responsable que tenía el doctor Camuñas Córdova. A la luz de estos antecedentes nos

vemos precisados a avalar la conclusión rendida por la Comisionada Especial. Cónsono con ello, sostenemos que el letrado incurrió en una violación al Canon 21 del Código de Ética Profesional, *supra*.

Por otro lado, al determinar la sanción disciplinaria que se le impondrá al abogado que haya incurrido en conducta antiética, podemos tomar en cuenta lo siguiente:

> (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si esta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) *la aceptación de la falta y su sincero arrepentimiento*; (v) si se trata de una conducta aislada; (vi) *el ánimo de lucro que medió en su actuación*; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien *atenuantes o agravantes*, que medien de acuerdo con los hechos. (Énfasis en el original.) In re Quiñones Ayala, 165 D.P.R. 138, 147 (2005).

Si bien el licenciado Pérez Marrero no tiene historial previo de sanciones éticas, en el presente caso, la conducta desplegada resulta acomodaticia y en contravención al marco ético esbozado. Asimismo, ha amancillado la confianza y la transparencia que deben caracterizar a la noble profesión de la abogacía. Con su proceder, el querellado convirtió un sencillo proceso de compraventa en un martirio. Ello pues, su actitud de velar por su beneficio y el de la Corporación, impidió que el querellante defendiera propiamente sus intereses. Sus injustificables actuaciones causaron daños y perjuicios económicos al querellante. Súmesele a ello, que después de haber pasado por los rigores de las distintas etapas del

procedimiento disciplinario, el querellado aun no ha aceptado la falta imputada, ni demostrado arrepentimiento alguno que indique que merezca una salida cómoda del conflicto ético que provocó.

IV

Por los fundamentos que anteceden, ordenamos la suspensión inmediata del Lcdo. Osvaldo Pérez Marrero del ejercicio de la profesión de la abogacía y la notaría por el término de seis meses, contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no rendido. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta días. Asimismo, tiene el deber de informar de inmediato su suspensión a los foros judiciales y administrativos.

Finalmente, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Pérez Marrero y entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

      Osvaldo Pérez Marrero

CP-2010-4

SENTENCIA

En San Juan, Puerto Rico, a 18 de abril de 2012.

     Por los fundamentos que anteceden, ordenamos la suspensión inmediata del Lcdo. Osvaldo Pérez Marrero del ejercicio de la profesión de la abogacía y la notaría por el término de seis meses, contados a partir de la notificación de esta Sentencia.

     El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no rendido. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta días. Asimismo, tiene el deber de informar de inmediato su suspensión a los foros judiciales y administrativos.

     El Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Pérez Marrero y entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Notifíquese personalmente.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo