Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br>Miguel A. Ojeda Martínez | 2012 TSPR 112<br><br>185 DPR ____ |

Número del Caso: CP-2011-7

Fecha: 3 de julio de 2012

Abogado de la Parte Querellada:

      Por derecho Propio

Oficina de la Procuradora General:

      Lcda. Zaira Girón Anadón
      Subprocuradora General

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Materia: Conducta Profesional – La suspensión será efectiva el 6 de julio de 2012 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Querella |
|---|---|---|
| Miguel A. Ojeda Martínez | CP-2011-7 | |

*PER CURIAM*

San Juan, Puerto Rico, a 3 de julio de 2012.

Hoy ejercemos nuestra jurisdicción disciplinaria sobre un notario que dio fe sobre hechos que le constaban como falsos. También, debemos determinar si un abogado incurre en una violación al Canon 38 de Ética Profesional, *infra*, al enviar una carta al quejoso, mediante la cual le avisó de su intención de presentar una Demanda de daños y perjuicios alegadamente causados por su Queja. Antes de evaluar las controversias planteadas, veamos los hechos que las generaron.

I

El Lcdo. Miguel Ángel Ojeda Martínez (en adelante licenciado Ojeda Martínez o querellado)

fue admitido al ejercicio de la abogacía el 25 de enero de 1985 y prestó juramento como notario el 1 de julio de 1985.

El 11 de agosto de 2005 el Sr. Luis Raúl Delgado Mercado (en adelante quejoso) presentó una Queja contra el licenciado Ojeda Martínez.[1] El 25 de octubre de 2005, la Secretaria de este Tribunal, en cumplimiento de la Regla 14(d) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A R.14, refirió a la Oficina de Inspección de Notarías (en adelante ODIN) copia del expediente de la Queja de referencia para la investigación y el informe correspondiente. Procedemos a relatar en detalle los acontecimientos que motivaron la Querella, según surgen del Informe del Comisionado Especial, del Informe de ODIN y del expediente sobre la gestión profesional del licenciado Ojeda Martínez.

Surge del Informe de ODIN que para la fecha del otorgamiento de la Escritura Núm. 24 de 22 de mayo de 1989 (en adelante Escritura Núm. 24), los dueños registrales del inmueble en cuestión eran el padre y la madre del quejoso. El licenciado Ojeda Martínez autorizó la Escritura Núm. 24, sobre Donación y Acta de Comprobación de Edificación Nueva. Mediante la referida Escritura, los dueños registrales del

---

[1] El quejoso adujo que el licenciado Ojeda Martínez, actuando como notario, incurrió en conflicto de interés al autorizar la Escritura Núm. 24 de 22 de mayo de 1989 y la Escritura Núm. 71 de 22 de septiembre de 1990. Además, alegó que el abogado ocultó documentos, faltó a la lealtad y fidelidad a la amistad, y se autorepresentó en una Escritura de Compraventa para ocultar información y no compartir bienes gananciales con su exesposa. Por último, indicó que el abogado intentó sobornarlo para intentar detener la investigación. Sin embargo, estas alegaciones fueron depuradas según la prueba evaluada por la Oficina de Inspección de Notarías.

inmueble en cuestión, donaron su derecho propietario a Lisandra Delgado Mercado —hija de los donantes y hermana del quejoso— y a su esposo, Braulio Collazo Tosca. Esta donación fue revertida posteriormente mediante la Escritura Núm. 71 de 22 de septiembre de 1990 (en adelante Escritura Núm. 71), autorizada por el Notario aquí querellado. En esta última instancia, comparecieron como donantes la hermana del quejoso y su esposo; como donatarios, comparecieron el padre y la madre del quejoso.

Por su parte, ODIN concluyó que el querellado autorizó un Contrato simulado mediante la referida Escritura Núm. 24. Específicamente, a base de las alegaciones del licenciado Ojeda Martínez, ODIN concluyó que el Querellado autorizó una Escritura de Donación con conocimiento de que los comparecientes deseaban realizar la compraventa de la propiedad a favor de la hermana del quejoso y su esposo. En consecuencia, ODIN imputó al licenciado Ojeda Martínez una violación al Canon 35 del Código de Ética Profesional. 4 L.P.R.A. Ap. IX C. 35. ODIN también concluyó que el licenciado Ojeda Martínez incurrió en una conducta altamente impropia en contravención al Canon 38 del Código de Ética Profesional. 4 L.P.R.A. Ap. IX C. 38. Basó su determinación en que, dentro del trámite de la presente Queja,[2] el querellado cursó una carta al quejoso en la cual le notificó la posibilidad de instar una Demanda por daños y perjuicios

---

[2] AB-2005-180

supuestamente causados por el quejoso, a raíz de la presentación de la Queja de autos.

Por otro lado, según relató el licenciado Ojeda Martínez en su Réplica a la Queja presentada, el quejoso solicitó sus servicios legales durante el año 1989. Adujo el licenciado Ojeda Martínez que el Quejoso le informó que interesaba obtener el dinero correspondiente a sus derechos que según él tenía sobre la segunda planta de una casa que pertenecía a sus padres. El quejoso alegó que la segunda planta le pertenecía pues, según él, fue construida con su patrimonio. Por su parte, la hermana del quejoso, junto a su esposo, interesaba comprar la propiedad y solicitar un préstamo hipotecario. De esta forma, los padres y dueños de la propiedad acordaron vender la propiedad a su hija y pagar al quejoso el dinero que reclamaba. A su vez, el quejoso le informó al Notario que la propiedad se utilizaría como garantía hipotecaria y "que era necesario que estuviera registrada a nombre de su hermana y su cuñado para gestionar el préstamo".[3]

Así las cosas, el licenciado Ojeda Martínez informó al quejoso "que si todas las partes estaban de acuerdo, la única manera de poder realizar dicha transacción válidamente era por vía donación".[4] Posteriormente, el querellado autorizó la Escritura Núm. 24, *supra,* sobre Donación y Acta

---

[3] Réplica a la Queja AB-2005-180, pág. 2.
[4] *Íd.*

de Comprobación de Edificación Nueva. Sin embargo, aunque la hermana del quejoso y su cuñado comenzaron a gestionar el préstamo hipotecario, el quejoso informó al licenciado Ojeda Martínez que el préstamo no fue otorgado. Por esta razón, el querellado aconsejó al quejoso y a su familia "revertir" el "título de propiedad a nombre de sus padres vía donación[,] tal y como se había hecho en un principio".[5] Así, el 22 de septiembre de 1990, el querellado autorizó la Escritura Núm. 71, mediante la cual Lisandra Delgado Mercado y su esposo –donatarios en la Escritura Núm. 24– comparecieron como donantes y sus padres como donatarios. Esta Escritura se inscribió en el Registro de la Propiedad.

El 31 de mayo de 2011, luego de examinar el Informe de ODIN, ordenamos a la Procuradora General que presentara la correspondiente Querella. En esta, imputó violaciones a los Cánones 35 y 38 del Código de Ética Profesional, *supra*.[6]

---

[5] *Íd.*

[6] La Procuradora General imputó los siguientes cargos:

**Cargos I y II**

El licenciado Miguel A. Ojeda Martínez incurrió en conducta que viola la fe pública notarial de la cual es custodio y los preceptos enunciados en el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 35, al dar fe de hechos falsos en la Escritura Núm. 24 de 22 de mayo de 1989 en donde se realiza una donación cuando las partes interesaban una compraventa, donación que luego fue revertida en una segunda escritura autorizada por dicho abogado el 22 de septiembre de 1990, Escritura Núm. 71. El notario al autorizar dichas transacciones conocía que las partes lo que interesaban en realidad era la venta del inmueble en cuestión y la obtención de dinero para realizar un pago al quejoso, señor Luis Raúl Delgado Mercado, quejoso.

**Cargo III**

Comenzado el trámite, nombramos al Hon. Wilfredo Alicea López como Comisionado Especial. En la conferencia celebrada el 29 de noviembre de 2011 por el Comisionado Especial, las partes estipularon someter el caso basado en las constancias de los autos.

Sometido el caso ante nuestra consideración y contando con los escritos que obran en autos, incluyendo el Informe del Comisionado Especial, examinamos las normas aplicables.

## II

## A.

El Canon 35, *supra*, impone a los abogados un deber de actuar con sinceridad y honradez. Este canon dispone:

> La conducta de cualquier miembro de la profesión legal ante los tribunales para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o

---

El licenciado Miguel A. Ojeda Martínez violó las disposiciones del Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 38, el cual, entre otras cosas, dispone que todo abogado tiene el deber de evitar, en todo momento, hasta la apariencia de conducta impropia. Los hechos relatados previamente y contenidos en el Informe rendido por ODIN en cuanto a la comunicación del 30 de octubre de 2008, demuestra a todas luces la violación de este [c]anon.

facilitar la desaparición de evidencia testifical en un caso también es altamente reprochable.

Al respecto, hemos expresado que la conducta de un abogado debe ser sincera y honrada frente a todos y ante todo tipo de acto. *In re Pons Fontana*, 182 D.P.R. 300 (2011). En esencia, se infringe este deber por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad, puesto que no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar. *In re Nieves Nieves*, 181 D.P.R. 25 (2011).

En ese sentido, hemos apuntalado que

. . . se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable, la verdad es atributo inseparable de ser abogado y sin ello, la profesión jurídica no podría justificar su existencia. *In re Montañez Miranda*, 157 D.P.R. 275, 281 (2002).

Respecto a los notarios, establecimos que cualquier hecho que un notario asevere en un documento público que no concuerde con la verdad, constituye una violación al Canon 35, *supra*, independientemente si hubo intención de faltar a la verdad. *In re Tejada Rivera I*, 155 D.P.R. 175, 182 (2001).

Entre algunas de las funciones de los notarios se encuentran la de "*recibir e interpretar la voluntad de las partes, dándole forma legal*, redactar escrituras y

documentos notariales a tal fin y conferirle autoridad. . .". (Énfasis suplido). Art. 2 de la Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002, conocida como Ley Notarial de Puerto Rico. Véase *In re Avilés, Tosado*, 157 D.P.R. 867 (2002). Para ello, el notario está autorizado por ley para dar fe e impartir autenticidad a los negocios jurídicos y otros actos extrajudiciales que se realicen ante él. *In re Avilés, Tosado*, supra, pág. 889. Todo lo anterior es corolario de la fe pública notarial, principio doctrinal consagrado en el Art. 2 de la Ley Notarial de Puerto Rico, *supra*. Este artículo dispone que

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar escrituras y documentos notariales a tal fin, y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. *Íd*.

Hemos reiterado que la fe pública notarial constituye la espina dorsal de la profesión notarial. *In re Collazo Sánchez*, 159 D.P.R. 769, 774 (2003); *In re Avilés, Tosado*, supra. Véase, además, *In re González Maldonado*, 152 D.P.R. 871 (2000). Esto se debe a que el notario no es un simple observador del negocio jurídico que autoriza; por el contrario, al dar fe, el notario se asegura que el documento

y los negocios allí contenidos son verdaderos y que la transacción es válida y legítima. *In re Avilés, Tosado*, supra, pág. 889.

En fin, el Canon 35, *supra*, obliga a los miembros de la profesión legal a observar una conducta totalmente sincera y honrada y prohíbe cualquier medio incompatible con la verdad. *In re Cuyar Fernández*, 163 D.P.R. 113, 117 (2004). Es por ello que condenamos enérgicamente la participación *consciente* de un abogado, como funcionario o parte, en el otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. "Tal conducta es incompatible con la función pública del notario y con las exigencias de veracidad y honestidad que esta función acarrea". *In re Collazo Sánchez,* supra, pág. 775.

### B.

Nos corresponde evaluar si el notario querellado violó su deber ético impuesto por el Canon 35, *supra*. En particular, debemos auscultar si el notario, según dispuesto en los Cargos I y II, violó el principio de la fe pública notarial y su deber de sinceridad y honradez al autorizar la Escritura Núm. 24, *supra*, y la Escritura Núm. 71, *supra*.

En este caso, el licenciado Ojeda Martínez aceptó en su comparecencia de 5 de junio de 2005, que el verdadero propósito de las partes comparecientes en la Escritura Núm. 24, *supra,* era realizar una compraventa y que fue él quien

asesoró a las partes para que realizaran la transacción mediante Contrato de Donación; ello con el propósito de que los donatarios obtuvieran posteriormente un préstamo cuyo dinero utilizarían -la hermana del quejoso y su esposo- para pagar a los donantes por la propiedad. A su vez, el donante y padre del quejoso y donataria utilizaría el dinero recibido para pagar al quejoso la cuantía que éste reclamaba por la construcción de la segunda planta.

Esta admisión, sin más, es suficiente para concluir que el licenciado Ojeda Martínez no fue sincero al autorizar la Escritura Núm. 24, *supra*. El querellado dio fe de una transacción que no representaba el verdadero interés de las partes en ese momento. Mientras el deseo de las partes era conseguir un préstamo hipotecario para eventualmente otorgar un Contrato de Compraventa, el notario asesoró a las partes e indujo a simular un negocio jurídico para la consecución de otro verdadero e interesado por las partes. Es decir, el Notario aconsejó a las partes a transferir el dominio del inmueble en cuestión mediante una donación, mientras el acuerdo de las partes era la otorgación de aquellos contratos necesarios para la concesión final de una compraventa. Nótese que la donación hecha mediante la Escritura Núm. 24, *supra,* fue a título gratuito pues no se expresa precio alguno sobre la propiedad ni intercambio de bienes que pueda llevarnos a entender que en dicha Escritura hubo una donación parcial. Tampoco encontramos que el

querellado haya recogido de alguna manera en la referida Escritura la verdadera intención de las partes de pagar posteriormente al donante por el inmueble con el producto del préstamo. Al momento de que el querellado se enteró que la compradora no obtuvo el préstamo necesario para la compraventa, éste asesoró nuevamente a las partes a comparecer en la Escritura Núm. 71, *supra,* con el propósito de revertir la titularidad del inmueble donado.

Es por ello que, fuera de las rigurosidades y características de los negocios jurídicos que estuvieron implicados en esta transacción, no tenemos base alguna para concluir que el licenciado Ojeda Martínez autorizó un instrumento público que contuviera la verdadera intención de las partes de pagar posteriormente al donante por el inmueble. Esto nos lleva necesariamente a colegir que la autorización de la Escritura Núm. 24, *supra,* y la Escritura Núm. 71, *supra*, creó una impresión falsa de la realidad frente a terceros, incluyendo a potenciales acreedores hipotecarios y al Estado.

De lo anterior, resulta claramente que el querellado violó la fe pública notarial al impartir fe sobre unos hechos falsos con conocimiento de ello. Ciertamente, este proceder constituye una violación al Canon 35, *supra*, lo cual constituye una falta grave en nuestro ordenamiento.

III

No obstante la gravedad de los Cargos I y II discutidos *ante*, prestamos atención especial al Cargo III. Se nos indica que mientras la presente Queja se tramitaba, el licenciado Ojeda Martínez violó el Canon 38, *supra*, al enviarle una carta al quejoso en la cual le avisó de una posible Demanda en su contra por alegados daños sufridos como consecuencia del proceso disciplinario que hoy atendemos. Por la trascendencia del contenido de la comunicación, a continuación la reproducimos *integramente*:[7]

> 30 de octubre de 2008    Correo    Certificado    con Acuse de Recibo
>
> Sr. Luis Raul Delgado Mercado y su esposa, Sra. Zaida M. Reyes Hernandez
>
> Re:  Demanda en Daños y Perjuicios
>
> Estimado Sr. Y Sra. Delgado:
>
> El propósito de la presente carta es para informarle que luego de revisarlos hechos que usted y su esposa estipularon en el caso, Civil Num. K AC2005-8779 (508) en donde usted y su esposa acordaron, aceptaron y al día de hoy es final y firme, he decidido que llego el tiempo para que el abogado suscribiente le pida cuentas por los daños y perjuicios que durante años mantuvo a toda mi familia en angustia por usted haberme sometido una querella en el Tribunal Supremo, solicitando mi desaforo, destitución como abogado y los mas traumatico, el perder mi licencia que es con lo que me gano mis habichuelas y mantengo a mis hijas y familiares, he decidido presentar contra usted y su esposa una demanda por Daños y Perjuicios por haberme radicado una querella de mala fe, con toda intención de que me

---

[7] Transcribimos la carta tal como surge del expediente.

desaforaran y perdiera el modus vivendi de ganarme la vida y por último haber mentido bajo juramento al alegar que este abogado había defraudado a la Sra. Nilsa I. Caban apropiándome mediante engaño de la casa de Colinas de Fair View, que si su memoria aun le funciona, le ayude ha que no perdiera la misma primero ofreciéndome a prestarle el dinero para que usted pudiera pagar la hipoteca de esa casa y luego complaciéndolo y haciéndole el favor de comprarle esa casa por insistencia suya.

Ahora, la situación y el tiempo ha sacado la verdad a flote y con las estipulaciones que hizo en el caso antes mencionado y con la prueba de que usted mintió bajo juramento alegando que el suscribiente engaño a la Sra. Caban dejándola fuera de la correspondiente división de la misma, me han hecho decidir radicarle una demanda por la suma de $50,000.00 dolares y solicitarle al tribunal que me asegure el [c]obro de ese dinero poniendole un gravamen a su participación hereditaria en la propiedad donde reside. Lamento mucho que usted en su afan por hacerle daño a varias personas, no penso que le sucederia de ser la parte perdedora y la que con toda mala fe e intencion me radico una querella cargada de mentiras y calumnias que al presente tendra que pagar. El poner en riesgo el medio de una persona ganarse la vida de la forma mal intencionada que usted utilizo para hacerme daño, merece que ahora aprenda que lo que se hace de mala fe, a su tiempo tendra los efectos que merece. No creo que usted pueda pensar que el haberme intentado dejarme a mi y a mis hijas en la [c]alle, nos hizo sufrir y angustiarnos por todos estos años. Le doy la Gloria al Señor que no permitio que la maldad venciera la verdad y ahora le toca a usted y a su esposa sentir lo que mi familia sintió cuando usted y su esposa injustamente nos ataco y pidió desaforo.

Puede estar seguro que la prueba esta ahí y es cuestion de tiempo el que los tribunales observen las contradicciones que usted y su esposa hicieron en la querella que me radicaron y luego en la estipulación que presentaron en corte y que al dia de hoy ya es final y firme.

Le ofrezco una alternativa para que la acción que radicare no le afecte brutalmente y es que si usted mi hace un pago de $5,000,00 dolares como

gastos y daños ocasionados, en el termino de 30 dias, estaría dispuesto a renunciar por escrito el demandarlo por $50,000.00 dolares.

Aunque no lo crea, yo al contrario suyo le oro a Dios por usted porque se que ese es el deseo del Señor. Ahora sus actos tendrán que enfrentar sus efectos. Tiene 30 dias para aprovecharse de mi propuesta, de no aceptarla, lamentablemente, le radicare una demanda por los daños y angustias que usted me hizo pasar a mi y a mi familia y entendera que las actuaciones fuera de la voluntad de Dios tienen que pagar su precio.

En espera que sea sabio y acepte la alternativa que le ofrezco de compensar los daños brutales que su mala fe me ha ocasionado y paga en cheque certificado la suma de $5,000.00, dejare el asunto ahí, pero si usted comete el error nuevamente de creer que no tengo el derecho de reclamarle mediante esta carta, le aseguro que volvera nuevamente a perjudicarse aun mas de lo que actualmente esta.

Atentamente;

Lcdo. Miguel A. Ojeda Martinez (por la misericordia de Dios que no permitio que usted me dejara sin poderme ganar la vida[)].

Mediante la referida misiva, el querellado consideró que el proceso disciplinario fue instado por el quejoso sin fundamento alguno. En consecuencia, estimó que había sufrido daños y perjuicios ascendentes a cincuenta mil dólares ($50,000). Asimismo, el licenciado Ojeda Martínez aprovechó la misiva para hacer una oferta de transacción del potencial pleito. En específico, el notario ofreció abstenerse de presentar el potencial pleito por la suma de cinco mil dólares ($5,000). Consideramos que ese proceder representa una violación a los deberes éticos de la profesión legal. Veamos.

El Canon 38, *supra*, dispone, en lo pertinente, que todo abogado debe esforzarse para exaltar el honor y la dignidad de la profesión, aunque ello conlleve grandes sacrificios personales. Indudablemente, "cada abogado es un espejo en [el] que se refleja la imagen de la profesión". *In re Silvagnoli*, 154 D.P.R. 533, 541 (2001), citando *In re Ortiz Brunet*, 152 D.P.R. 542 (2000), y a *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974). El abogado debe evitar hasta la *apariencia* de conducta profesional impropia. *In re Silvagnoli*, supra, pág. 541. La razón es que la conducta impropia o hasta su apariencia, tiene el efecto de malograr la imagen, la confianza y el respeto de la ciudadanía hacia la profesión. *In re Gordon Menéndez I*, 171 D.P.R. 210, 216 (2007); *In re Sepúlveda Girón*, 155 D.P.R. 345 (2001). De esta forma, hemos sancionado a los abogados por la apariencia de conducta impropia. Véanse: *In re Silvagnoli Collazo*, supra; *In re Nogueras Cartagena*, 150 D.P.R. 667 (2000); *In re Ortiz Brunet*, supra.

Hemos establecido que un abogado no está impedido de aceptar su responsabilidad y transigir su diferencia con el quejoso. Véanse: Canon 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 26; *In re Ríos Ríos*, 175 D.P.R. 57, 76 (2008). Véase, además, *In re Pagán Ayala*, 117 D.P.R. 180, 187 (1986). Incluso, es norma que la admisión de responsabilidad civil y el resarcimiento por el abogado a su cliente serán factores atenuantes que se analizarán

conjuntamente con las circunstancias del caso. *In re Ríos Ríos*, supra, págs. 76-77. Sin embargo, el Canon 26, *supra*, establece un "principio ético . . . dirigido a evitar . . . que el abogado limite, se exonere o evada, contractualmente o de otro modo, su responsabilidad profesional". *Íd*. Por esta razón, en *In re Pagán Ayala*, supra, pág. 187, aclaramos que

> . . . en ninguna forma podrá el abogado transigir con su cliente la acción civil en daños por mala práctica profesional, al establecer como condición para ello que no se presente querella por violación ética en su contra. (Escolio omitido).

Por tal razón, un Contrato con tales condiciones no evita nuestra jurisdicción disciplinaria. *Íd*.

Sin embargo, en este caso nos encontramos en una situación distinta; no se trata de que el licenciado Ojeda Martínez hiciera una oferta de manera expresa en torno a la transacción de la Queja presentada. Por el contrario, el contenido de la carta sobre un aviso de pleito denota apariencia impropia que, a su vez, puede tener un efecto extremadamente lesivo para la honra de la profesión. En efecto, consideramos que este tipo de carta es altamente impropia cuando, aún pendiente el proceso disciplinario, un abogado ejerza presión económica y psicológica mediante artificios y presiones sobre los ciudadanos que presenten Quejas éticas. Esto puede resultar en un "chilling effect" de manera implícita. Asimismo, puede provocar que el quejoso desista del proceso disciplinario. En consecuencia,

resolvemos que enviar este tipo de carta amenazante aún pendiente la adjudicación del proceso disciplinario, constituye una violación al Canon 38 del Código de Ética Profesional, *supra*.

Somos conscientes de que las Quejas sobre conducta profesional dan paso a un proceso difícil de enfrentar para la vida profesional y personal de cualquier abogado. No obstante, el abogado no puede valerse de artificios y amenazas para presionar indebidamente a un quejoso. De igual forma, somos conscientes de que, en ocasiones, el abogado puede sentir extrema molestia, máxime cuando entiende que la Queja presentada en su contra no tiene fundamento válido. Empero, amenazar al quejoso con un posible pleito de daños y perjuicios tiene el efecto de crear una mancha sobre la honra de la profesión. Distinto al resto de los procesos adjudicativos judiciales o administrativos, el abogado debe enfrentar el proceso sobre conducta profesional con la honra y el sacrificio que conlleva la profesión de la abogacía; en su día, tendrá la oportunidad de defenderse y persuadir a todas aquellas personas relacionadas con el proceso adjudicativo de Quejas sobre conducta profesional. En fin, condenamos enérgicamente que un abogado intente evadir el proceso disciplinario enviando cartas de aviso de pleito por alegados daños causados por la presentación de una Queja relacionada con su conducta profesional.

Por los fundamentos antes esbozados, colegimos que el licenciado Ojeda Martínez incurrió en violaciones a los Cánones 35 y 38 del Código de Ética Profesional, *supra*, según lo dispuesto en los Cargos formulados. Nos resta determinar cuál debe ser la sanción a imponer.

IV

Hemos reiterado que al momento de imponer la sanción disciplinaria, consideramos los siguientes factores:

> (i) la buena reputación del abogado en la comunidad; (ii) el historial previo de éste; (iii) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) resarcimiento al cliente; y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien a tenor con los hechos. *In re Pérez Marrero*, res. el 18 de abril de 2012, 2012 TSPR 81, pág. 15, 2012 J.T.S. 94, 185 D.P.R ___ (2012), citando *In re Quiñones Ayala*, 165 D.P.R. 138, 147 (2005). Véase, *In re Mulero Fernández*, 174 D.P.R. 18, 37 (2008).

Estos criterios nos sirven de guía al determinar la sanción que procede imponer.

En su informe, el Comisionado Especial nos sugiere que atemperemos la sanción a las admisiones del licenciado Ojeda Martínez que ciertamente han sido de beneficio para el proceso disciplinario. También, al revisar el expediente personal del licenciado Ojeda Martínez, tomamos como atenuante que no tiene historial disciplinario previo al que hoy atendemos.

V

Por los fundamentos que anteceden, suspendemos al licenciado Ojeda Martínez del ejercicio de la abogacía y la notaría por un término de tres (3) meses a partir de la notificación de la presente Opinión *Per Curiam*. El licenciado Ojeda Martínez tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. Además, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Ojeda Martínez y los entregará a la Directora de la Oficina de Inspección de Notaría para la correspondiente investigación e informe.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Querella |
| Miguel A. Ojeda Martínez | | |
| | CP-2011-7 | |

Sentencia

En San Juan, Puerto Rico, a 3 de julio de 2012.

Por los fundamentos esbozados en la Opinión *Per Curiam* que antecede, suspendemos al licenciado Ojeda Martínez del ejercicio de la abogacía y la notaría por un término de tres (3) meses a partir de la notificación de la presente Opinión *Per Curiam*. El licenciado Ojeda Martínez tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. Además, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Ojeda Martínez y los entregará a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo